**FIN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **S.S. A/N/F OF A.J.S.,** | § | |
| | § | |
| **V.** | § | **Civil Action No. 5:22-cv-00093-RWS-JBB** |
| | § | |
| **DETROIT INDEPENDENT** | § | |
| **SCHOOL DISTRICT** | | |

---

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

---

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. 636. Defendants' Motion for Summary Judgment (Dkt. No. 22) is pending before the Court. Having carefully considered the relevant briefing and hearing arguments of counsel on September 5, 2023, the undersigned recommends the motion be **GRANTED.**

### I.   BACKGROUND

This is an action brought by S.S., as next friend to his minor child A.J.S. ("Plaintiff"). Plaintiff filed this lawsuit in the 102nd State District Court of Red River County, Texas against Defendant Detroit Independent School District. Dkt. No. 3. Defendant removed the case to this court on July 22, 2022. Dkt. No. 1.

Plaintiff's complaint alleges that Defendant was not selected for the Varsity volleyball team for a game on August 17, 2021, because of her race and ethnicity, causing her to suffer emotional distress and depression. Dkt. No. 3 at 1, 4. The complaint includes two counts of discrimination. In Count One, Plaintiff asserts a Title VI claim for discrimination based on race under 42 U.S.C. § 2000d. *Id.* at 5-6. In Count Two, Plaintiff asserts, pursuant to 42 U.S.C. § 1983,

1

that Defendant's acts and omissions were committed under the color of law and resulted in the violation of Plaintiff's rights under (1) the procedural due process requirements of the United States Constitution as set forth in the Fourteenth Amendment; (2) the substantive due process requirements of the United States Constitution set forth in the Fourteenth Amendment; and (3) the equal protection requirements of the United States Constitution set forth in the Fourteenth Amendment. *Id.* at 6-7.

## II.  DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

Defendant filed a Motion for Summary Judgment on June 5, 2023, moving for summary judgment on both counts. Dkt. No. 22 at 1-2. Defendant asserts that Plaintiff has not presented sufficient evidence to show racial discrimination or any discriminatory intent on the part of the district or the volleyball coaches. *Id*. at 2. According to Defendant, the one incident of Plaintiff not playing in the August 17, 2021, game against Yantis ISD (the "Yantis game") does not constitute conduct deemed discriminatory. *Id.* Thus, Defendant asserts Plaintiff's Title VI claim fails.

Defendant further asserts Plaintiff's 1983 claims fail. According to Defendant, even if Plaintiff could show racial discrimination and discriminatory intent, she cannot show that these actions were under the color of state law. *Id*. at 18. Defendant also claims that Plaintiff was not denied procedural due process because she quit the volleyball program the day after the Yantis game, September 18, 2021, despite given the chance to play on the JV1 squad. *Id.* at 22. Lastly, Defendant argues that Plaintiff's claim does not constitute a liberty or property interest protected by substantive due process. *Id.* at 23.

After being ordered to do so, Plaintiff responded to Defendant's motion for summary judgment. Although Plaintiff agrees with Defendant's identification of all three issues in this case, Plaintiff disagrees with Defendant's assertion that this case is based solely on Defendant's decision

not to select Plaintiff to play in the Yantis game; rather, according to Plaintiff, this case is based on "a course of conduct." Dkt. No. 24 at 1-2.

In its reply, Defendant argues that Plaintiff improperly added additional factual allegations in her response that were not included in the original complaint. Dkt. No. 29 at 1. Defendant also argues that Plaintiff does not point to any objective evidence that shows intentional discrimination regarding these allegations but instead relies on her subjective belief, which Defendant asserts is insufficient to show discrimination. *Id.* at 7-8.

### III. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in

original). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex*, 477 U.S. at 323. To meet its burden, the moving party must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Vallecillo v. Wells Fargo Bank, N.A.*, Civil Action No. 5:16-CV-935-DAE, 2018 WL 3603120, at *2 (W.D. Tex. May 15, 2018) (citing *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990)).   Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor . . . unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Computer Corp.*, 98 Fed. Appx. 335, 338 (5th Cir. 2004). Rather, the court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). In motions for summary judgment, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The court must consider all of the evidence but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

All facts and inferences drawn from those facts must be viewed in the light favorable to the party resisting the motion for summary judgment. *Mission Pharmacal Co. v. Virtus Pharm., LLC*, 23 F. Supp. 3d 748, 756 (W.D. Tex. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 97 (5th Cir. 1993)). "The court need consider only the cited materials, but it may consider other materials in the record." *Id.* at 756–57 (quoting FED. R. CIV. P. 56(c)(3)).

### IV. SUMMARY JUDGMENT EVIDENCE

#### A.    The evidence

Defendants submitted the following evidence in support of its motion (all attached to docket entry no. 22): (1) Affidavit of Jeff Allensworth ("Allensworth Aff."); (2) 2021 Volleyball Players ("Def. Ex. 2"); (3) Rosters for Games through August 31, 2021 ("Def. Ex. 3"); (4) Roster for August 17, 2021 Game ("Def. Ex. 4"); (5) 2021 Volleyball Schedule ("Def. Ex. 5"); (6) Affidavit of Josh Daigle ("Daigle Aff."); (7) Affidavit of Kathie Thompson ("Thompson Aff."); (8) DISD Board Policy FB (LEGAL) ("Def. Ex. 8"); (9) DISD Board Policy FB (LEGAL) ("Def. Ex. 9"); (10) DISD Board Policy FFH (LEGAL) ("Def. Ex. 10"); (11) DISD Board Policy FFH (LOCAL) ("Def. Ex. 11"); (12) DISD Board Policy FFH (Exhibit) ("Def. Ex. 12"); (13) DISD Board Policy FNG (LOCAL) ("Def. Ex. 13"); (14) Excerpts from 2021-22 DISD Student Handbook ("Def. Ex. 14"); (15) Excerpts of April 10, 2023 Deposition of Plaintiff A.J.S. ("Def. Ex. 15"); (16) Excerpts of April 10, 2023 Deposition of Plaintiff S.S. as a/n/f of A.J.S. ("S.S. Dep.").

In her response, Plaintiff submitted additional excerpts of Plaintiff A.J.S.' April 10, 2023, deposition. ("Plaintiff Ex. 1," attached to docket entry no. 24).

## B.    Material facts[1]

Plaintiff started playing volleyball in 8th grade and continued playing during her freshman year of high school. Def Ex. at 11:6-10. In August of 2021, Plaintiff was a sophomore attending Detroit High School ("DHS") in the Detroit Independent School District. Dkt. No. 3 at 3. Plaintiff went out for the high school's volleyball team during this time. Def. Ex. 15 at 5:16-21.

Jeff Allensworth was the head volleyball coach at DHS, and Josh Daigle was the assistant coach.[2] Allensworth Aff., ¶4; Daigle Aff., ¶1. Due to the number of students who came out for volleyball in 2021, coach Allensworth and assistant coach Daigle decided to field three volleyball squads. Allensworth Aff., ¶8. Those squads were varsity ("Varsity"), junior varsity one ("JV1"), and junior varsity two ("JV2").[3] *Id*. In total there were 23 young ladies on the roster for the 2021 volleyball season.[4] Def Ex. 2. Three out of the 23 young ladies were minorities: (1) an African American junior; (2) a mixed race senior (African American and white); and (3) Plaintiff who is of mixed race (Native American and African American). *Id*.; *see also* S.S. Dep. at 5:8-13. The rest of the young ladies were white. *Id*.

---

[1] The material facts set forth in this section represent the facts as discerned by the Court from the pleadings and the parties' respective evidentiary submissions, considering the relevant summary judgment standard requiring the record be viewed in the light most favorable to the nonmoving party. Accordingly, these are the "facts" for purposes of summary judgment only; they may not be the actual facts. *See Willmore-Cochran v. Wal-Mart Assocs., Inc.*, 919 F. Supp. 2d 1222, 1228 n. 4 (N.D. Ala. 2013).

[2] Jeff Allensworth has been the head coach at DHS for the past 14 years. Allensworth Aff., ¶4. According to coach Allensworth, during his tenure, the DHS Varsity volleyball team has made the playoffs every year and has never had a losing season. *Id*.

[3] Coach Allensworth stated in his affidavit that not all schools carry three squads; thus, it was possible the JV1 and JV2 squads would not play in all contests. Allensworth Aff., ¶8.

[4] One of the young ladies, who was white, was out of state for a family funeral from August 4-18, 2021; thus, she did not play during any of the matches that Plaintiff played in. Def. Ex. 2 at 2. Another player, who was white, did not join the volleyball team until August 23, 2021. *Id*. at 3.

The Detroit ISD volleyball team played in four sets of games prior to the Yantis game: The first set of games of the 2021 season was a scrimmage at Commerce ISD on August 6, 2021, where all squads were scheduled to play Commerce ISD and Cumby ISD. Def. Ex. 5; *see also* Allensworth Aff., ¶10. According to the coaches, they set the rosters for all three squads based on the skill levels that players displayed during the first three days of practice. Allensworth Aff., ¶10. The highest-skilled players were assigned to the Varsity squad, players on the next level of skill were assigned to the JV1 squad, and the players with the lowest level of skill were assigned to the JV2 squad. *Id*. Plaintiff was assigned to JV1 for this game. Def. Ex. 3 at 2. The other two minority players were placed on the Varsity squad. *Id.* For the morning matches, there were eight female volleyball players assigned to JV1, seven to Varsity, and seven to JV2.[5] *Id*. at 2-3.

The second set of games, another scrimmage, occurred later that same day versus Dekalb; however, only Varsity and JV1 were assigned to play. *Id*. at 4. There were seven young ladies assigned to play on Varsity, and seven ladies, including Plaintiff, assigned to play on JV1.[6][7] *Id.*

The third set of games occurred on August 10, 2021, when Varsity and JV1 squads played Trenton ISD. Def. Ex. 5; *see* Def Ex. 3 at 5. Plaintiff was assigned to JV1, and the two other minority players were assigned to Varsity. Def. Ex. 3. at 5. In total, seven players were assigned to Varsity and six to JV1.[8] *Id.*

---

[5] One of the young ladies, a freshman identified as M.C., often played for JV1 and/or JV2 during the beginning of the season. Def. Ex. 3. She was assigned to play JV1 and JV2 during this scrimmage. Def Ex. 3 at 2-3. Despite that evidence, there is a dispute as to whether M.C. was officially a member of the JV1 team during this time period. Dkt. No. 35 (Transcript) 5:4-10; *see* Def. Ex. 15 at 6:2-17; Allensworth Aff., ¶18; Daigle Aff., ¶9. Since this fact is in dispute, the court will resolve this issue in favor of the non-moving party, the Plaintiff. *Hockman v. Westward Communs., LLC*, 407 F.3d 317, 325 (5th Cir. 2004) ("We review the record in the light most favorable to the nonmovant and draw all reasonable inferences in her favor."). For purposes of this Report, M.C. was not an official member of the team. Nevertheless, it is not in dispute that M.C. played in JV1 matches before and after Plaintiff left the team. Def. Ex. 3.

[6] *Id.* – M.C. did not play for JV1 during this match. Def. Ex. 3 at 4.

[7] One of the JV1 players quit two days after this match.

[8] *See supra* note 5 – M.C. did not play in this match.

The fourth set of games was the Detroit ISD volleyball tournament held on August 12th and August 14th of 2021 at DHS. Def. Ex. 5. DHS Varsity and JV1 were assigned to play for both days, with Plaintiff assigned to JV1 and the other two minority players assigned to Varsity. Def. Ex. 3 at 7. In total, there were seven players assigned to Varsity and seven players assigned to JV1.[9] *Id.*

Coach Allensworth stated he and coach Daigle continued to assess the skill levels of the DHS volleyball players through practices and games after the Commerce scrimmage. Allensworth Aff., ¶11. As part of that assessment, the coaches would identify which players had the skill levels to be on each of the three DHS volleyball squads and which players were on the "bubble" of moving up from the one squad to the next level squad. *Id.* This assessment continued until just before District play began on September 10, 2021, at which point the rosters of the three squads were essentially "set." *Id.*; *see also* Def. Ex. 5.

Early on, coach Allensworth stated he and coach Daigle identified three players on the JV1 squad who were showing the talent and skill level to potentially move up to Varsity. Allensworth Aff*.,* ¶12. Plaintiff was not one of the three young ladies. *Id.* All three young ladies were white. *Id.*; Def. Ex. 2 at 2.

DHS Varsity and JV1 squads were scheduled to play Yantis ISD on August 17, 2021. Def. Ex. 5 at 2; Daigle Aff., ¶4; Allensworth Aff., ¶13. Coach Allensworth and coach Daigle learned the day before the game that Yantis ISD had fielded only one squad that year, so only the DHS Varsity squad would be participating. Allensworth Aff., ¶13; Diagle Aff., ¶4. According to their affidavits, they decided it would be a good opportunity for some of the better JV1 players to get experience on the Varsity squad. *Id.* The three white players, who they previously identified as

---

[9] M.C. played for JV1.

having the potential to move up to Varsity, were selected to play in the Detroit ISD v. Yantis match. *Id*. The first young lady was a backup middle blocker, the second was a backup defensive specialist, and the last was a backup setter. *Id.* All three ladies traveled with the Varsity team for the Yantis game, which was an away game.[10] *Id*., ¶14; *Id*., ¶5. All three players were listed on this roster for the Yantis game. Def. Ex. 4.

Another JV1 player, a senior, was also invited by the coaches to travel with the Varsity team to the Yantis game.[11] Allensworth Aff., ¶15; Diagle Aff., ¶6; *see also* Def. Ex. 4. This senior was listed on the roster for the Yantis game. Def. Ex. 4. Thus, up to three JV1 players were not selected to play for the Varsity team in the Yantis game: Plaintiff, a white junior, and possibly M.C., a white freshman.[12] Allensworth Aff., ¶15; Diagle Aff., ¶6; Def. Ex. 2 at 2-3. However, the JV1 junior attended the Varsity Yantis match to record the game, even though she was not listed on the roster.[13] Def. Ex. 4; Def. Ex. 3 at 8.

Plaintiff did not attend the Yantis game nor was she listed on the roster. Def. Ex. 4; Def. Ex. 3 at 8. Plaintiff later learned − through her mother who saw a picture on Facebook − who attended the Yantis game. Plaintiff Ex. 1 at 11:5-9. Plaintiff's father confronted coach Allensworth on August 18, 2021, the day after the Yantis game. Allensworth Aff., ¶19; *see* Plaintiff Ex. 1 at 11:10-12. Plaintiff was then removed from DHS volleyball by her father. S.S. Dep. at 10:18-22.

---

[10] Both coaches allege they decided to select these young ladies based on their play at the Detroit Tournament and the skill level that they demonstrated at practice. Allensworth Aff., ¶14; Daigle Aff., ¶5

[11] According to coach Allensworth, it has been his practice to allow senior students to dress out and travel with the Varsity squad, regardless of their skill level once the in-district portion of the schedule is reached. Allensworth Aff., ¶15. At this point, in-district games had not started. Def. Ex. 5 at 2. Because no other squad was going to the Yantis match, the coaches allowed this JV1 senior to travel with the Varsity squad to the Yantis match. Allensworth Aff. ¶15. There is no evidence that Plaintiff has not challenged Mr. Allensworth explanation concerning this player.

[12] There is some dispute concerning M.C.'s official status with the team despite the fact she played in games. *See supra* n. 5.

[13] According to both coaches, the junior JV1 player "unexpectedly" appeared at the gym just before the Varsity team was leaving for the Yantis game and asked if she could go. Allensworth Aff., ¶17; Daigle Aff., ¶8. As maintained by both coaches, she was not asked or invited to go to the game. *Id*. Because she took her own initiative, the coaches allowed the JV1 junior to travel with the team and film the game. *Id*. However, she did not dress out for the game. *Id*.

In her response, Plaintiff alleged the following facts, which Defendant argues goes beyond the allegations in the complaint: (1) the coaches would take more time with other players during practice; (2) the coaches did not teach the Plaintiff how to play the front row positions, even though each of the players were required to play front row and back row positions, and the coaches supported other players in doing so; (3) the coaches came at Plaintiff angrily almost, and was nice to the other girls and the coaches would often laugh at mistakes made by other players, but when it came to Plaintiff, the coaches were completely serious; (4) the coaches would laugh if other players missed serves in practice, but would get upset with Plaintiff if she missed a serve; (5) the coaches treated the other players differently from the Plaintiff all the time; (6) Plaintiff's teammates would sit at coach Allensworth's' desk and just talk, and he rarely corrected them to do their work. However, when Plaintiff went up to his desk, it was different, and he told her to go back to her desk and do her work; (7) Coach Daigle would help Plaintiff's teammates with their classwork, but there were times which he expected Plaintiff to figure it out on her own; (8) the coaches would act normal around Plaintiff when here teammates were not present, but would not acknowledge the Plaintiff when her teammates were around unless she needed something. Dkt. No. 24 at 2-4.

## V.  PLAINTIFF'S TITLE VI CLAIM (COUNT I)

### A.    Applicable law

Title VI states: "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. Section 2000d; *see also Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 407 (5th Cir. 2015).

"Title VI prohibits race discrimination in all programs receiving federal funds." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020).

When a Plaintiff relies on circumstantial evidence to support a race discrimination claim, that claim is properly analyzed under the *McDonnell Douglas* burden-shifting framework.[14] *Morgan v. Braswell*, No. 4:10-CV-452, 2014 WL 1280499, *11 (E.D. Tex. Mar. 27, 2014) ("When there is no direct evidence of discrimination, courts look to the *McDonnell–Douglas* burden shifting framework."); *Gilani v. Univ. of Texas Sw. Med. Ctr.,* No. 3:21-CV-1461-N, 2023 WL 2518811, *19 (N.D. Tex. Mar. 13, 2023) ("When a plaintiff provides circumstantial evidence of intentional discrimination, courts apply the *McDonnell Douglas* burden shifting framework."); *see also Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020) ("*McDonnell Douglas* sought only to supply a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination.").

Under the *McDonnell Douglas* burden shifting framework, the plaintiff must first provide the Court with sufficient evidence to make a *prima facie* case of discrimination. *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 404 (5th Cir. 1999) (citing *McDonnell*, 411 U.S. at 801–803). To demonstrate a *prima facie* case of discrimination under Title VI, the plaintiff must present evidence in support of intentional racial discrimination and that the entity is the recipient of federal financial assistance. *Russell v. City of Tupelo*, 544 F.Supp. 3d 741, 762-63 (N.D. Miss. June 16,

---

[14] Although the Fifth Circuit has not officially resolved this issue, district courts within this circuit use the Title VII "proof scheme" to analyze Title VI discrimination claims. *See Bisong v. Univ. of Houston*, 493 F. Supp. 2d 896, 904-905 (S.D. Tex. 2007) (applying *McDonnell Douglas* analysis to Title VI claim); *Baldwin v. Univ. of Texas Med. Branch*, 945 F. Supp. 1022, 1031 (S.D. Tex. 1996) ("The Court's inquiry into intentional race discrimination is essentially the same for individual actions brought under…Title VI and Title VII."); *Gonzalez v. Northside Indep. Sch. Dist.,* No. SA-20-CV-00926-XR, 2020 WL 5640459, at *4 (W.D. Tex. Sept. 22, 2020) ("The burden of proof in a Title VI case is the same as that for Title VII and other civil rights statutes"); *See also Morgan v. Braswell,* No. 4:10-CV-452, 2014 WL 1280499, *11 (E.D. Tex. Mar. 27, 2014). At the hearing, counsel for both parties agreed the Title VI claim should be analyzed under the burden shifting standard set by *McDonnell Douglas*. Dkt. No. 35 (Transcript) 10:7-14; 39:9-12.

2021); *Canutillo Indep. Sch. Dist. v. Leija*, 101 F.3d 393, 397 (5th Cir. 1996) ("[A] Title VI plaintiff must prove discriminatory intent.").

Second, if the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its alleged conduct. *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); *McDonnell*, 411 U.S. at 802.

Third, if the defendant meets its production burden, then the burden shifts back to the plaintiff to "offer sufficient evidence to create a genuine issue of material fact that either (1) the [Defendant's] reason is a pretext or (2) that the [defendant's] reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007); *see also Morgan*, 2014 WL 1280499, at *11.

**B.     Analysis**

**1.     *Prima facie* showing of discriminatory intent**

To establish *prima facie* showing of discriminatory intent, the plaintiff must show that "the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004). "Intentional discrimination encompasses practices by which the actor intended to treat similarly situated individuals differently solely on the basis of national origin, color, or race." *Morgan,* 2014 WL 1280499 at *13. A plaintiff may prove discriminatory intent "by departures from procedural norms, a history of discrimination against others similarly situated, or by circumstantial evidence, such as a pattern of conduct inexplicable on grounds other than race." *Id*.; *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977).

Importantly, conclusory allegations, without reference to specific facts, are not enough to prove discriminatory intent. *Priester*, 354 F.3d at 420; *see also Fennell*, 804 F.3d at 412. A plaintiff's subjective belief of discrimination is insufficient to meet the pleading standard for Title VI claims. *Z.B. v. Irving Indep. Sch. Dist., No. 3:17-CV-2583-B, 2019 WL 2716504,* at *4 (N.D. Tex. June 28, 2019), *aff'd sub nom. Bhombal v. Irving Indep. Sch. Dist.,* 809 F. App'x 233 (5th Cir. 2020) (ruling that plaintiff failed to allege facts showing intentional discrimination because her allegations did not connect the alleged discriminatory acts to the plaintiff's race or national origin); *Mohamed v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602 (N.D. TX. May 18, 2017) (dismissing Title VI claim because the plaintiff could not show that he was treated differently than other similarly situated students and the only evidence offered was his subjective belief that he had been discriminated against)*; Fontaine v. Dallas Cnty. Cmty. Coll. Dist.,* No. 3:13-CV-3635-D, 2014 WL 6680711, at *5 (N.D. Tex. Nov. 25, 2014) ("To establish discrimination under Title VI, the mere fact that Plaintiff might believe that these acts were taken for discriminatory or [retaliatory] reasons is not enough.").

Defendant argues that "Plaintiff has not and cannot establish the essential elements of her claims under Title VI, 42 U.S.C. § 2000d, et. seq."[15] Dkt. No. 22 at 2. Focusing on the intent element, Defendant asserts there is no evidence in the record to suggest a history or pattern of conduct by Defendant of discrimination against minority students. *Id.* at 11, 14. Plaintiff responded by identifying excerpts from her deposition where she explained the coaches treated her differently than her peers of other races (Dkt. No. 24 at 2-4, 6), which Defendant characterizes as her uncorroborated subjective belief concerning isolated incidents (Dkt. No. 29 at 7-9).[16]

---

[15] Defendants do not dispute that the district receives federal financial assistance. Dkt. No. 35 (Transcript) at 9:13-15.

[16] Defendant's counsel described Plaintiff's case as "[t]he young lady took offense [and] basically accused the coaches

Here Plaintiff has not met her burden of showing a *prima facie* case of discrimination. Plaintiff's response does not cite any evidence supporting intentional discrimination such as departure from procedural norms, a history of discrimination, or a pattern of inexplicable conduct. Plaintiff's summary judgment evidence instead consists primarily of her own statements made in her deposition. Specifically, Plaintiff claims that she is better than at least four other players on the JV volleyball team; thus, she contends she was qualified to play on the Varsity squad and disagrees with Defendant's contention that race did not play a factor in the coach's decision to not select her to play in the Yantis game. Dkt. No. 24 at 5; *see* Def. Ex. 15 at 5:4-25.

As noted above, a plaintiff's subjective opinion does not create a "triable issue." *Fontaine*, 2014 WL 6680711, at *5. The primary issue in these cases is not whether the defendant made an erroneous decision (such as misjudging Plaintiff's skill) but whether the decision was made with a discriminatory motive. *See Mayberry v. Vought Aircraft Co*., 55 F.3d 1086, 1091 (5th Cir. 1995) (explaining, in the context evaluating a legitimate nondiscriminatory reason, that an error in judging an employee's work performance does not by itself support an inference of discriminatory motive). As noted above, a plaintiff's subjective opinion does not create a "triable issue." *Fontaine*, 2014 WL 6680711, at *5. Thus, Plaintiff has not met her burden of showing a *prima facie* case of discrimination.

---

of being racist because she doesn't like their roster decision [but that's] what coaches do every day of the week. If this case goes forward, then every coach in the state of Texas is going to have to look over their shoulders every time they make a roster decision to see if they've got a discrimination claim coming." Dkt. No. 35 (Transcript) 13:24-14:10 (cleaned up).

To be fair, the coach's decisions involved considerations other than evaluating skill: One student was selected for the Yantis game because it was her senior year, and another student was allowed to travel with the team to film the game (but not to play). Plaintiff was not aware she was the only, or possibly one of two, JV1 players who did not travel with the Varsity team to Yantis until her mother saw a picture on Facebook, leading to the events that culminated in filing the complaint. As explained in this Report, discovery has revealed no discriminatory intent for the coach's decisions, which is one of the reasons for recommending granting summary judgment to Defendant.

Plaintiff also raised alleged acts of discrimination beyond the Yantis game that were not expressly contained in her original complaint. *See* pp. 10, *supra* and Dkt. No. 24 at 2-5 (generally describing how the coaches allegedly treated Plaintiff differently than the other players in practice and in class). Plaintiff asserts these "course of conduct" claims are tied to the statement in the complaint that she "began to experience discriminatory actions from Defendant 'beginning' in August 2021." Dkt. No. 24 at 2; *see* Dkt. 3, ¶ 17.

The Court has serious concerns regarding the propriety of allowing Plaintiff to base her claims on these allegations, which do not appear to have been fairly disclosed or fully explored during discovery. *See Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (explaining that claims raised for the first time in a response to a motion for summary judgment are not properly before the court). Moreover, Plaintiff confirmed that the basis of her lawsuit is due to her not being taken to the Yantis game at the deposition. Plaintiff Dep. at 12:18-21.

But even if these allegations were properly before the court, they cannot meet the Plaintiff's burden of proving intentional discrimination. None of the alleged instances objectively describe intentional discrimination on the part of the volleyball coaches. Each instance simply outlines actions committed by the coaches that seem objectively unfair, however nondiscriminatory. *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997) (noting how unfair decisions made by the defendant will not fall under Title VI protection, only decisions motivated by unlawful animus will); *see Harness v. Watson*, 47 F.4th 296, 308 (5th Cir. 2022) (noting how there must be a clear pattern of conduct inexplicable on grounds other than race when showing discriminatory intent through course of conduct). For example, Plaintiff has not offered any evidence of racially charged statements made by the coaches or offered evidence of a pattern of conduct of the coaches discriminating against the other two minority players or students. *Ordona v. Mem'l Hermann*

15

*Health Sys.*, No. 4:15-CV-0166, 2017 WL 432887, at *18 (S.D. Tex. Feb. 1, 2017) (noting how the plaintiff was unaware of other cases of age discrimination in his department when asked during his deposition; thus, the court decided that there was no triable issue of fact because the plaintiff could not corroborate his assertion of age discrimination). It's unclear if Plaintiff even attempted to gather such evidence in discovery. *See* Dkt. No. 35 (Transcript) 22:10-20 (Defendant's counsel explaining that Plaintiff did not take any depositions).

Because Plaintiff has no competent summary judgment evidence to establish a *prima facie* case of discrimination, dismissal is proper. However, for purposes of this Report and Recommendation, the undersigned will assume Plaintiff has established a *prima facie* case of discrimination. The Court continues its analysis under the *McDonnell Douglas* framework and will determine whether the Defendant has presented a legitimate, nondiscriminatory reason for its alleged conduct.

**2.      Legitimate, nondiscriminatory reason**

To establish a legitimate, nondiscriminatory reason for its alleged actions, a defendant must set forth, "through the introduction of admissible evidence, reasons for its actions which, 'if believed by the trier of fact,' would support a finding that unlawful discrimination" was not the cause of the their actions. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999) (citing *Hicks*, 509 U.S. at 507). "For a reason to be legitimate and non-discriminatory, the defendant is not required to 'persuade the court that it was actually motivated by the proffered reasons' but must 'clearly set forth, through the introduction of admissible evidence, the reasons for [its decision].'" *Mitchell v. TJX Companies, Inc.*, Civil Action No. 1:18-CV-82-SA-DAS, 2019 WL 3806369, at *4 (N.D. Miss. Aug. 13, 2019) *(quoting Vess v. MTD Consumer Grp., Inc.*, Civil Action No. 1:16-CV-80-DMB-RP, 2018 WL 934935, at *8 (N.D. Miss. Feb. 16, 2018), *aff'd*, 755

Fed. Appx. 404 (5th Cir. 2019) (quoting *Turner*, 675 F.3d at 900)). This is a burden of production, rather than persuasion. *Ouhrabka*, 2021 WL 3206805, at *8 (citing *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000)).

Defendant has met its burden of production by offering evidence of a legitimate, nondiscriminatory reason for not selecting Plaintiff to play in the Yantis game. Defendant has offered affidavits from both coaches that explain the coaching decision made on August 17, 2021. The DHS volleyball coaches assessed each player and placed them on the respective squad based on skill level. *See* Allensworth Aff., ¶¶10-11. Some players were considered on the "bubble" of moving up to a higher squad due to their steady improvement throughout the pre-season and level of skill. *Id*. at ¶11; *see also* Daigle Aff. ¶4. Early on in the 2021 season, three players on the JV1 squad were identified by the DHS volleyball coaches as having the potential to move up to Varsity. Allensworth Aff., ¶12. Plaintiff was not among them. *Id*. Ultimately, those three players became full-time members of the DHS Varsity squad by the time in-district play began on September 12. *Id*., ¶22. Based on the assessment of her skill and talent by her coaches, Plaintiff was not selected to play on the Varsity team or to suit out for the volleyball game against Yantis ISD. *Id*., ¶12.

Defendant has also articulated a reason as to why the JV1 senior and JV1 junior were allowed to attend the Yantis game. According to coach Allensworth, it has been his practice to allow senior students to dress out and travel with the Varsity squad, regardless of their skill level. *Id.*, ¶15. Because no other squad was going to the Yantis match, the coaches allowed this JV1 senior to travel with the Varsity squad to the Yantis match. *Id.* According to both coaches, the junior JV1 player "unexpectedly" appeared at the gym just before the Varsity team was leaving for the Yantis game and asked if she could go. *Id.*, ¶17; Daigle Aff., ¶8. As maintained by both coaches, she was not asked or invited to go to the game. *Id*. Because she took her own initiative,

the coaches allowed the JV1 junior to travel with the team and film the game. *Id*. Thus, the Defendant has met its burden and offered a legitimate, nondiscriminatory reason for its actions. This now shifts the burden to Plaintiff to show that Defendant discriminated against her because of her race.[17]

### 3.    Pretext

If the defendant produces a sufficient reason for its actions, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the employer's rationale is pretextual or that race was at least a motivating factor. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citation omitted). To rebut a defendant's nondiscriminatory showing, a plaintiff must offer sufficient evidence to create a genuine issue of material fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed–motive[s] alternative)." *Ouhrabka*, 2021 WL 3206805, at *8 (quoting *Rachid*, 376 F.3d at 312); *see also Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (A plaintiff may establish pretext through "evidence of disparate treatment[.]") "In assessing whether a protected characteristic was a motivating factor, a court must consider the evidence presented by the plaintiff as a whole." *Id*. (quoting *Taylor v. Peerless Indus. Inc.*, 322 Fed. Appx. 355, 365 (5th Cir. 2009)). When applying

---

[17]Defendants did not raise a nondiscriminatory reason for the coaches' alleged actions in the classroom and at practice toward Plaintiff. Since these allegations were raised for the first time in response to motion for summary judgment by the Plaintiff, they were not apart of Plaintiff's evidence for the initial burden of proving discriminatory intent. *Fisher v. Metropolitan Life Ins. Co*., 895 F.2d 1073, 1078 (5th Cir. 1990) (claims raised for the first time in a response to a motion for summary judgement is "not properly before the court"). Thus, Defendant's need not give an a nondiscriminatory reason for conduct that was never properly alleged before this court. *Morgan v. Braswell,* No. 4:10-CV-452, 2014 WL 1280499, at *11 (E.D. Tex. Mar. 27, 2014) (During the *McDonnell Douglas* burden shifting analysis, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its alleged conduct" after the plaintiff proves their cause of action).

the *McDonnell Douglas* framework in summary judgment motions, the Fifth Circuit has consistently held that generalized statements will not raise a genuine issue of material fact regarding whether the defendant's proffered reasons were pretextual. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) ("To establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice."); *Amie v. El Paso Indep. Sch. Dist.*, 253 F. App'x 447, 453 (5th Cir. 2007); *Ward v. Midwestern State Univ.*, 217 Fed. Appx. 325, 328-329 (5th Cir. 2007); *Eberle v. Gonzales*, 240 F. App'x 622, 630-631 (5th Cir. 2007); *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 390 (5th Cir. 2020).

Here, the Court has carefully viewed the evidence in the light most favorable to Plaintiff and holds Plaintiff has failed to meet her burden of persuasion. Plaintiff has not presented evidence sufficient to create a fact issue that the decisions of Defendant's volleyball coaches concerning the Varsity roster for the Yantis ISD game on August 17, 2021, were anything other than the coaches' assessment of the skills of the individual players or the justification of allowing a senior to dress out and travel with Varsity.

Plaintiff first attempts to rebut the Defendant's proffered reason by citing an excerpt from her deposition about how she has not been the same after not being selected to attend the Yantis game. Dkt. No. 24 at 4-5. This assertion, which is based on her mental state, is not enough to show pretext. This argument speaks to Plaintiff's reaction to their alleged actions and does not present evidence to rebut the Defendant's nondiscriminatory reason for the coaches' decision.

Plaintiff then attempts to rebut Defendant's argument by highlighting how she is a better volleyball player than the JV1 players that were selected to play in the Yantis game:

> Plaintiff disagrees with Defendant's contention that at the time of the Yantis game, the volleyball skills of Plaintiff and two other players were not equal to the

19

skills of the three JV1 players selected to play with the DHS Varsity at the Yantis ISD game.

Plaintiff asserts that she is better than at least four other players on the JV Volleyball team.

Dkt. No. 24 at 5 (internal numbers omitted) (internal citations omitted). First, Plaintiff's disagreement with Defendant's proffered reason is not enough to show pretext and simply doubts its argument. *See Bienkowski v. Am. Airlines*, 851 F.2d 1503, 1508 & n.6 (5th Cir. 1988) ("[m]erely casting doubt on the employer's articulated reason does not suffice to meet the plaintiff's burden of demonstrating discriminatory intent"). Second, her belief that she is better than the other players is not ample evidence of pretext. In the cited deposition excerpt, Plaintiff asserts that she is better than other JV1 players in different positions. Plf. Ex. 1 5:1-25. These are generalized statements that reflect her subjective belief, which are not sufficient evidence to create a genuine issue of material fact on whether Defendant's reasoning is not true. *See, e.g. Leach v. Baylor Coll. of Med.*, No. CIV.A. H-07-0921, 2009 WL 385450, at *24 (S.D. Tex. Feb. 17, 2009) ("A professor's assertion or belief that he was better qualified than the person selected for the position is insufficient to create a fact issue on pretext."); *Ward v. Midwestern State Univ.*, 217 Fed. Appx. 325, 328-329 (5th Cir. 2007) (ruling plaintiff's evidence of his own deposition testimony where he stated that he was "better qualified and better published than his colleagues" was "mere speculation" and thus failed to present evidence to support his subjective belief that he was better than his colleagues). Thus, Plaintiff has no evidence corroborating her belief and has not made any "mixed–motive[s] alternative" argument. *See Ouhrabka*, 2021 WL 3206805, at *8.

**4.    Summary**

In sum, considering the proffered evidence in the light most favorable to Plaintiff, Plaintiff failed to make a *prima facie* showing of discriminatory intent or show Defendant's legitimate, nondiscriminatory reason for its action was pretextual. The Court recommends Defendant's

motion for summary judgment be granted as to Plaintiff's Title VI discrimination claim and that such claim be dismissed with prejudice.

## VI. PLAINTIFF'S § 1983 CLAIMS (COUNT II)

### A. Applicable law

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012); *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) ("Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights."). To state a valid claim for a § 1983 claim, the plaintiff must show: 1) the conduct deprived the plaintiff of rights secured by the Constitution or federal law and 2) the offending conduct was committed by a person acting under color of state law. *Bauer*, 341 F.3d at 357.

### 1. Constitutional Violation

"[W]ithout an underlying constitutional violation, there can be no § 1983 liability imposed[.]" *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997); *see also Loftin v. City of Prentiss, Miss*., 33 F.4th 774, 783 (5th Cir. 2022).

### a. *Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. Thus, "[t]o state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that [(1)] he received treatment different from that received by similarly situated individuals and that [(2)] the unequal treatment stemmed from a discriminatory intent'" *Priester,* 354 F.3d at 424 (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)).

21

b.      *Due process*

The Due Process Clause of the Fourteenth Amendment provides "[n]o State shall . . . deprive any person of life, liberty, or property." U.S. CONST. AMEND. XIV, § 1. A claim under the Fourteenth Amendment due process clause may proceed under substantive due process or procedural due process. *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1014 (5th Cir. 2023). "The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty." *Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017).

Substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (internal quotations omitted). This essentially "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Lewis v. Univ. of Tex. Med. Branch*, 665 F.3d 625, 630 (5th Cir. 2011) (quoting *Marco Outdoor Adv., Inc. v. Regional Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007)). To assert a Fourteenth Amendment due process claim under 42 U.S.C. § 1983, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He [or she] must have more than a unilateral expectation of it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). 'A property' right must be "both 'fundamental to our scheme of ordered liberty' and 'deeply rooted in this Nation's history and tradition.'" *Timbs v. Indiana*, 139 S. Ct. 682, 689 (2019) (quoting *McDonald*, 561 U. S., at 767, 130 (2010)).

However, for procedural due process, "the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional," instead "what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (internal quotations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as 'procedural' due process." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citations omitted). "The Supreme Court has adopted a two-step analysis to examine whether an individual's procedural due process rights have been violated." *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010). "The first question 'asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Id.* (quoting *Kentucky Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989)).

2.    **Color of State Law**

It is well established that a governmental entity cannot be held vicariously liable for the actions of its employees. *See, e.g.*, *Rhyne v. Henderson County*, 973 F.2d 386, 391 (5th Cir. 1992) ("A municipality, of course, can act only through its human agents, but it is not vicariously liable under § 1983."). Section 1983 liability can be imposed in a governmental entity only when it has officially adopted an unconstitutional policy or acquiesced in an unconstitutional custom. *See Monell v. New York Dept. of Social Service*, 436 U.S. 658, 690-91, (1978). Under Texas law, the final policymaking authority for a school district is the district's board of trustees. *See* Tex. Educ. Code §§ 11.051, 11.151; *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 752 (5th Cir 1993).

B.    **Analysis**

23

1.    **Constitutional Violation**

a.    ***Plaintiff has not presented summary judgment evidence to create a genuine issue of material fact that the coaches acted with discriminatory intent toward Plaintiff or any other member of a protected class for an equal protection violation***

Defendant first asserts Plaintiff was treated no differently than other players on the team whose race was white. Dkt. No. 22 at 16. Relying on the affidavits of the coaches, Defendant states the race of the other two JV1 players who were not on the roster for the Yantis match was white. *Id*. (citing Allensworth Aff., ¶16; also citing Daigle Aff., ¶7). Thus, according to Defendant, Plaintiff cannot establish that she received treatment different from that received by similarly situated individuals. *Id*. Plaintiff failed to address this argument in her response.

Individuals that are "in all relevant aspects alike," other than their membership in the protected class, are deemed similarly situated. *Doe v. Univ. of N. Texas Health Sci. Ctr*., No. 4:21-CV-00658-O, 2023 WL 4166458, *5 (N.D. Tex. June 23, 2023); s*ee Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "Because the clause's protection reaches only dissimilar treatment among similar people, if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action does not deny equal protection of the laws." *Mahone v. Addicks Util. Dist. of Harris Cnty*., 836 F.2d 921, 932 (5th Cir. 1988) (quoting *Hines v. Quillivan*, 982 F.3d 266, 272–73 (5th Cir. 2020)).

Plaintiff fails to provide evidence that similarly situated white players were treated differently than her. Plaintiff was not the only JV1 player not selected to play for the Varsity squad in the Yantis ISD game on August 17, 2021. At least one, possibly two,[18] other players were not on the roster for the Yantis game. Def. Ex. 4. Though one of these two players traveled with the

---

[18] *See supra* note 5.

varsity team to record the game, this player was not on the roster and was not selected to participate in the game.

Even if Plaintiff could show she was treated differently than other white players, Defendant argues that Plaintiff's equal protection claim still fails because she has not presented sufficient summary judgment evidence to create a fact issue as to discriminatory intent. *See* Dkt. No. 22 at 16.

For a plaintiff to have an equal protection claim, there must be allegations of intentional discrimination or allegations from which the court can reasonably infer intentional discrimination. *Mohamed*, 252 F. Supp. 3d at 616. A plaintiff will not succeed if her allegations are "merely conclusory, without reference to specific facts[.]" *Priester*, 354 F.3d at 420; *Hugh Symons Grp., plc v. Motorola, Inc*., 292 F.3d 466, 470 (5th Cir. 2002) ("Unsubstantiated assertions or conclusory allegations are not competent summary judgment evidence and are insufficient to overcome a summary judgment motion.").

Here, as explained with respect to Count I, Plaintiff has not offered direct evidence that the coaches engaged in intentional discrimination. For example, Plaintiff does not allege the coaches made racially derogatory statements or have a practice of excluding minority players from the Varsity team. Defendant contends that the volleyball coach's decision concerning the Varsity roster for the Yantis ISD game on August 17, 2021, was based on an honest assessment of the player's skills. In her response, Plaintiff does not directly address this argument and instead broadly asserts that race did play a factor in the coaching decision regarding which JV1 players would play for the Yantis Varsity game. Dkt. No 24 at 5.

During her deposition, Plaintiff was asked to discuss what happened to cause her to believe that Coach Allensworth was discriminating against her:

Q: Okay. So, what happened to cause you to believe that coach Allensworth was treating you differently on the basis of your race?
A: For the Yantis tournament he told us that the JV game was going to be cancelled, and then he never mentioned anything about any JV team members going and playing varsity with varsity. So, I was the only one left at home that was actually on the team, and I'm the only colored person playing.

Def. Ex. 15 at 6:18-25. The only suggestion of discrimination is Plaintiff's understanding that she was the only JV1 player not invited to play on the Varsity team, and her subjective belief that she was excluded due to her race, which is insufficient. *See Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983) ("We are not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief."); *Raina v. Veneman*, 152 Fed. Appx. 348, 350 (5th Cir. 2005) ("An employee's subjective belief that he was discriminated against, standing alone, is not adequate evidence to survive a motion for summary judgment."); *Cf., Fennell*, 804 F.3d at 415 (inferring discriminatory intent when the school coach "admonished" a popular African American hairstyle worn by the plaintiff and referred to it as "ethnic"). Although the Court has no reason to doubt the genuineness of Plaintiff's belief that she was discriminated against, the evidence of record does not support a finding that the coaches acted with discriminatory intent when she was left off the varsity roster.

**b.** ***Plaintiff has not presented sufficient summary judgment evidence to create a genuine issue of material fact that she has been deprived of a protected interest in property under both substantive and procedural due process***

Defendant argues that Plaintiff cannot establish a due process violation. First, Defendant argues that there was not a violation of her substantive due process rights because "participation in interscholastic athletics is not a constitutionally protected liberty or property interest." Dkt. No. 22. at 23. Plaintiff did not address this issue in her response[19] and summary judgment could be

---

[19] At the hearing, Plaintiff's counsel stated that "the Plaintiff has a property interest in her education or educational program." Dkt. No. 35 (Transcript) at 37:2-9. The argument is misplaced. It is true that, "[b]y establishing a

granted on this basis alone. *See Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (ruling there was no genuine issue of fact for the plaintiff's liability claims because the plaintiff did not address these issues in their opposition to the defendants' motion for summary judgment). Nonetheless, circuit law confirms Defendant's argument.

The Fifth Circuit has held that plaintiffs have no "cognizable property interest in the components of her public education." *James*, 45 F.4th at 867 (case dealing with class ranking). More specifically, the Fifth Circuit has held that a student's participation in interscholastic athletics is not an interest protected by the due process clause. *Niles v. University Interscholastic League*, 715 F.2d 1027, 1031 (5th Cir. 1983); s*ee Hardy v. University Interscholastic League*, 759 F.2d 1233, 1235 (5th Cir. 1985) (Federal courts "are not super referees over high school athletic programs."); *Blue v. University Interscholastic League*, 503 F. Supp. 1030, 1035 (N.D. Tex. Nov 19, 1980) ("Plaintiffs have no property interest in the alleged injury to their hoped-for careers in college football or for football scholarships arising from inability to play in the football playoffs or to be viewed by college scouts."); *see also Mitchell v. Louisiana High School Athletic Asso.*, 430 F.2d 1155 (5th Cir. 1970); *A.V. v. Plano Indep. Sch. Dist.*, 585 F. Supp. 3d 881 (E.D. Tex. Feb 14, 2022).

Here, Plaintiff has not presented sufficient evidence to create a genuine issue of material fact regarding a violation of a protected interest. Under controlling law, participation in athletics is not a protected interest covered by the substantive due process clause. *Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020) ("In reviewing a substantive due process claim, the existence of a

---

compulsory school system, a state creates a property interest…to a public education . . . protected by the Due Process Clause." *James v. Clev. Sch. Dist.*, 45 F.4th 860, 865 (5th Cir. 2022) (quoting *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975). However, "no protected property interest is implicated when a school declines to offer a student a particular curriculum or denies participation in interscholastic athletics." *Id.* (internal quotations omitted).

protected property interest is a threshold issue we must reach before we consider whether the defendants' actions were arbitrary and capricious."). Thus, Plaintiff does not have a legitimate claim of entitlement to a recognized property interest.

Regarding procedural due process, Defendant argues that this claim additionally fails because Plaintiff denied herself the opportunity to work hard and earn a spot on the Varsity squad. Dkt. No. 22 at 22. As noted, Plaintiff did not address this argument in her response. Regardless of the merits of Defendant's argument, because Plaintiff does not have a protected interest in athletics, the District was not mandated to provide the Plaintiff with the minimal procedures provided by the Fourteenth Amendment. *Hardy*, 759 F.2d at 1235 (*Jeffries v. Turkey Run Consol. Sch. Dist.*, 492 F.2d 1, 4 (7th Cir.1974)) ("[T]he right to procedural due process is applicable only to state action which impairs a person's interest in either liberty or property.").

**2.     Color of State Law**

**b.     *Even if Plaintiff could show a constitutional violation, Plaintiff has not presented summary judgment evidence to create a genuine issue of material fact that the coaches did so under color of state law***

Defendant contends that Plaintiff cannot establish that the actions of the coaches were done under color of state law because it is undisputed that the District's Board of Trustees, not the coaches, are the policymakers and that the Board has not officially adopted an unconstitutional policy or acquiesced to an unconstitutional custom. Dkt. 22 at 18-19. In support, Defendant attached the affidavit of Kathie Thompson, Superintendent of Detroit Independent School District, and the DISD Board Policies attached to it, along with the relevant portions of the DISD Student Handbook. In her response, Plaintiff "disagrees" with that argument and references her deposition wherein she explained her coaches treated her "differently [than] her peers of other races." Dkt. No. 24 at 6.

A government entity's liability under section 1983 requires proof of three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); (citing *Monell*, 436 U.S. at 694). A party can introduce an official policy or an informal policy that is a widespread practice "so common and well-settled as to constitute a custom that fairly represents municipal policy." *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579).

When a plaintiff uses prior instances to formulate a widespread practice, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984); *See Peterson v. City of Fort Worth*, 588 F.3d 838, 850-851 (5th Cir. 2009). "The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *G. M. v. Shelton*, 595 Fed. Appx. 262, 265 (5th Cir. 2014) (quoting *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). Thus, to show the existence of a policy, a plaintiff must rely on "a pattern of unconstitutional conduct" by non-policymaker "municipal actors or employees." *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 169 (5th Cir. 2010).

Here, Plaintiff's complaint does not challenge the express policies adopted by the Detroit Independent School District school board that prohibit discrimination or harassment against any student on the basis of race, color, national origin, or any other basis prohibited by law. *See* Def. Ex. 8 at 2; Def. Ex. 11 at 2. Instead, her complaint focuses on the coach's decision not to include Plaintiff on the varsity roster (for the Yantis game). Dkt. No. 3, ¶¶ 17-20. Even if Plaintiff had

alleged/shown that decision was a violation of her constitutional right, the record evidence shows the decision was an isolated event of district employees rather than a policy or custom of the district.

As noted above, Plaintiff's response argued that there was a "customary practice of her coaches to treat Plaintiff differently [than] her peers of other races." Dkt. No. 24 at 6. However, the events described do not amount to a standard custom in the district. In her deposition, Plaintiff asserts that the coaches treated her differently during practice and in the classroom over the previous year. Plaintiff Ex. 1 at 9:5-24. Plaintiff never contends that the coach's conduct occurred for so long or so frequently that one could infer that the Detroit ISD policymakers authorized or approved the conduct, even though it was not an express policy. *See Webster*, 735 F.2d at 842. The events described do not amount to a standard custom of discrimination because the coaches' actions, which may seem unfair, are not the types of acts that are affirmatively discriminatory. In other words, Plaintiff does not show evidence of a persistent course of discriminatory conduct on part of the coaches that would establish a customary practice.

Based on the foregoing, Plaintiff has failed to present sufficient evidence that the coach's decision not to include Plaintiff on the Varsity volleyball team or the coach's treatment of Plaintiff described in her deposition demonstrate that Detroit ISD maintained a custom of discriminating against students on the basis of race. Plaintiff has failed to state a claim for municipal liability under 42 U.S.C. § 1983 against a school district in Texas. Thus, Plaintiff cannot establish that the actions of the coaches to which she complains were done under the color of state law.

**b.    Summary**

Plaintiff has failed to provide sufficient evidence to create a genuine issue of material fact regarding her § 1983 claim. Plaintiff failed to produce summary judgment evidence that she was

treated differently than other similarly situated players of a different race or that the DHS volleyball coaches acted with discriminatory intent. Further, there is no due process claim because Plaintiff's claim does not constitute a liberty or property interest that is protected by due process. Finally, there is an absence of state action because Plaintiff does not identify any policy adopted by the District's Board of Trustees that resulted in racial discrimination in athletics or any widespread custom of racial discrimination in student athletics. Thus, the Court recommends summary judgment be granted as to Plaintiff's § 1983 claim.

## VII. RECOMMENDATION

Based on the foregoing analysis, it is hereby

**RECOMMENDED** that Defendants Motion for Summary Judgment (Dkt. No. 22) be **GRANTED.**

**RECOMMENDED** that Plaintiff's claims against Detroit Independent School District be dismissed with prejudice.

### Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district

court, except upon grounds of plain error, provided that the party has been served with notice that

such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*,

79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C.

§ 636(b)(1) (extending the time to file objections from ten to fourteen days).

SIGNED this the 15th day of November, 2023.

J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE