IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| S.S. a/n/f of A.J.S., § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | CIVIL ACTION NO. 5:22-CV-00093-RWS-JBB |
| § | |
| DETROIT INDEPENDENT SCHOOL § | |
| DISTRICT, § | |
| § | |
| Defendant. § | |

## ORDER

Before the Court are Plaintiff's Objections (Docket No. 39) to the Report and Recommendation (Docket No. 38). The objections have been fully briefed. Docket No. 40. For the reasons set forth below, Plaintiff's Objections (Docket No. 39) are **OVERRULED**, the Report and Recommendation (Docket No. 38) is **ADOPTED** as the opinion of the District Court, Defendant's Motion for Summary Judgment (Docket No. 22) is **GRANTED**, and Plaintiff's claims against Defendant Detroit Independent School District are **DISMISSED WITH PREJUDICE**.

## BACKGROUND

Plaintiff S.S. filed this case as next friend to his minor child, Plaintiff A.J.S. Docket No. 3 at 1. During the fall of 2021, Plaintiff A.J.S. was a player on the JV1[1] squad for the volleyball team at Detroit High School ("DHS") in Detroit Independent School District. *See* Docket No. 38 [hereinafter R&R] at 6–7. Jeff Allensworth was the head volleyball coach at DHS, and Josh Daigle

---

[1] The highest-skilled players on the DHS volleyball team were assigned to the varsity squad, players on the next level of skill were assigned to the junior varsity one ("JV1") squad, and the players with the lowest level of skill were assigned to the junior varsity two ("JV2") squad. R&R at 6–7.

was the assistant coach. *Id.* at 6. Plaintiff alleges that Defendant discriminated against Plaintiff A.J.S. on the basis of her race by not selecting her to participate in the varsity volleyball game against Yantis ISD on August 17, 2021. *See* Docket No. 3 ¶ 1, 19. Plaintiff A.J.S. is of mixed race (African American and Native American). *Id.* Like Plaintiff A.J.S., two white JV1 volleyball players on the team also did not participate in the varsity volleyball game against Yantis. R&R at 9. Plaintiff A.J.S. was one of three minority players on the volleyball team. *Id.* at 6. The other two minority players are African American and mixed race (white and African American), respectively. *Id.* The other two minority players were assigned to the varsity team. *Id.* at 7.

In Count One, Plaintiff asserts a claim for discrimination based on race under 42 U.S.C. § 2000d (Title VI). *Id.* ¶ 32–34. In Count Two, Plaintiff asserts, pursuant to 42 U.S.C. § 1983, that Defendant's acts and omissions as to A.J.S. were committed under the color of law and resulted in the violation of A.J.S.'s rights under: (1) the procedural due process requirements of the United States Constitution as set forth in the Fourteenth Amendment (2) the substantive due process requirements of the United States Constitution as set forth in the Fourteenth Amendment; and (3) the equal protection requirements of the United States Constitution as set forth in the Fourteenth Amendment. *Id.* ¶ 35–38.

Defendant filed a motion for summary judgment, asserting that Plaintiff's complaint fails to allege a claim for which relief can be granted for Count One and Count Two. Docket No. 22. After the parties briefed the motion for summary judgment (Docket Nos. 23, 24), the Magistrate Judge held a hearing on the motion. Docket Nos. 32, 35.

The Magistrate Judge then entered a 32-page Report and Recommendation ("R&R"), recommending that the motion for summary judgment be granted and Plaintiff's claims be

dismissed with prejudice. R&R at 31. The R&R found that Defendant is entitled to summary judgment on Count One and Count Two. *Id.*

As to Count One, Plaintiff had to present evidence of intentional discrimination by Defendant and that they were an entity receiving federal financial assistance.[2] R&R at 11. Plaintiff relied on circumstantial evidence to show intentional discrimination; thus, the R&R applied the *McDonnell Douglas*[3] burden-shifting framework.[4] *Id.* (citing *Morgan v. Braswell*, No. 4:10-CV-452, 2014 WL 1280499, *11 (E.D. Tex. Mar. 27, 2014)). However, Plaintiff's submissions consisted primarily of statements by Plaintiff during her deposition and new allegations raised for the first time in her response to the motion for summary judgment. R&R at 14. As to statements by Plaintiff, the R&R found that the submitted deposition excerpts were insufficient to support her claim because they only showed Plaintiff claiming to be better than at least four JV1 volleyball players allowed to attend the Yantis varsity volleyball game. *See id.* As to new allegations, the Magistrate Judge had serious concerns regarding the propriety of these new allegations that were raised for the first time in a responsive brief. *See id.* at 15, 18 n.17. Thus, the R&R concluded that Plaintiff failed to make a *prima facie* showing of discriminatory intent. *Id.* Moreover, the R&R found that even if she met her burden, Defendant offered a legitimate, nondiscriminatory reason

---

[2] At the September 5, 2023 hearing, Defendant stated that it did not dispute that Defendant received federal financial assistance. Docket. No. 35 (Transcript) at 9:13-15.

[3] Referring to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[4] Other district courts in the Fifth Circuit have used the framework to analyze Title VI discrimination claims. *See* R&R at 11 n.14; *see, e.g.*, *Bisong v. Univ. of Houston*, 493 F. Supp. 2d 896, 904–05 (S.D. Tex. 2007)); *Baldwin v. Univ. of Texas Med. Branch*, 945 F. Supp. 1022, 1031 (S.D. Tex. 1996); *Gonzalez v. Northside Indep. Sch. Dist.*, No. SA-20-CV-00926-XR, 2020 WL 5640459, at *4 (W.D. Tex. Sept. 22, 2020). At the hearing, counsel for both parties agreed the Title VI claim should be analyzed under the *McDonnell Douglas* framework. Docket. No. 35 at 10:7–14; 39:9–12.

for the coaching decision. *Id.* at 17. The burden would then shift back to Plaintiff, which was not met because there was no evidence presented to doubt that the coaching decision was anything other than the coach's honest assessment of the players' skills. *Id.* at 19.

As to Count Two, Plaintiff had to show a constitutional violation that was conducted under color of state law. R&R at 21. First, the R&R found that Plaintiff did not present evidence of a constitutional violation because a student's participation in interscholastic sports is not a protected liberty or property interest under the Due Process clause. *Id.* at 27. Additionally, the R&R found the evidence only shows that the coaching decision was based on skill rather than racial discrimination; thus, the evidence could not support an equal protection violation. *Id.* at 24. Second, as to the color of state law standard, Plaintiff failed to show there was a custom or policy of racial discrimination that Defendant adopted. *Id.* at 29.

Plaintiff filed objections to the R&R (Docket No. 39) and Defendant responded to Plaintiff's objections (Docket No. 40).

**LEGAL STANDARD**

**I.     Standard of Review**

A district court conducts a *de novo* review of any portion of a magistrate judge's report and recommendation to which any party files an objection. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000). After conducting a *de novo* review, the district court may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

## II. Summary Judgment

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

## III. Title VI

Title VI states: "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C.

Section 2000d; *see also Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 407 (5th Cir. 2015). "Title VI prohibits race discrimination in all programs receiving federal funds." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583 (5th Cir. 2020).

When a Plaintiff relies on circumstantial evidence to support a race discrimination claim, that claim is analyzed under the *McDonnell Douglas* burden-shifting framework. *Morgan*, 2014 WL 1280499 at *11 (E.D. Tex. Mar. 27, 2014) ("When there is no direct evidence of discrimination, courts look to the McDonnell–Douglas burden shifting framework."); *Gilani v. Univ. of Texas Sw. Med. Ctr.*, No. 3:21-CV-1461-N, 2023 WL 2518811, *19 (N.D. Tex. Mar. 13, 2023) ("When a plaintiff provides circumstantial evidence of intentional discrimination, courts apply the *McDonnell Douglas* burden shifting framework."); *see also Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020) ("*McDonnell Douglas* sought only to supply a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination.").

Under the *McDonnell Douglas* burden shifting framework, the plaintiff must first provide the Court with sufficient evidence to make a *prima facie* case of discrimination. *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 404 (5th Cir. 1999) (citing *McDonnell*, 411 U.S. at 801–803). To demonstrate a *prima facie* case of discrimination under Title VI, the plaintiff must present evidence supporting intentional racial discrimination and that the entity is the recipient of federal financial assistance. *Russell v. City of Tupelo*, 544 F.Supp. 3d 741, 762-63 (N.D. Miss. June 16, 2021); *Canutillo Indep. Sch. Dist. v. Leija*, 101 F.3d 393, 397 (5th Cir. 1996) ("[A] Title VI plaintiff must prove discriminatory intent.").

Second, if the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its alleged conduct. *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); *McDonnell*, 411 U.S. at 802.

Third, if the defendant meets its production burden, then the burden shifts back to the plaintiff to "offer sufficient evidence to create a genuine issue of material fact that either (1) the [Defendant's] reason is a pretext or (2) that the [defendant's] reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007); *see also Morgan*, 2014 WL 1280499, at *11.

IV.     **Section 1983**

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (discussing 42 U.S.C. § 1983); *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) ("Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights."). To state a valid claim for a § 1983 claim, the plaintiff must show: 1) the conduct deprived the plaintiff of rights secured by the Constitution or federal law and 2) the offending conduct was committed by a person acting under color of state law. *Bauer*, 341 F.3d at 357.

"[W]ithout an underlying constitutional violation, there can be no § 1983 liability imposed[.]" *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997); *see also Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 783 (5th Cir. 2022). The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. Thus, "[t]o state a claim of racial

discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent'" *Priester*, 354 F.3d at 424 (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)).

The Due Process Clause of the Fourteenth Amendment provides "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law" U.S. CONST. amend. XIV, § 1. A claim under the Fourteenth Amendment due process clause may proceed under substantive due process or procedural due process. *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1014 (5th Cir. 2023). "The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty." *Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017).

Section 1983 liability can be imposed on a governmental entity only when it has officially adopted an unconstitutional policy or acquiesced in an unconstitutional custom. *See Monell v. New York Dept. of Social Service*, 436 U.S. 658, 690–91, (1978). Under Texas law, the final policymaking authority for a school district is the district's board of trustees. *See* Tex. Educ. Code §§ 11.051, 11.151; *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 752 (5th Cir 1993).

## DISCUSSION

### I. *De Novo* Review of Plaintiff's Objections to the Magistrate Judge's Report and Recommendation

#### A. Title VI Claim

Plaintiff's first objection focuses on the Magistrate Judge's intentional discrimination finding with a particular focus on the new allegations discussed in the R&R. Plaintiff argues that she met her burden of making a *prima facie* case of discrimination by presenting factual allegations in her response Defendant's motion for summary judgment. Docket No. 39 at 1–2. She listed the

following specific factual allegations in support of her intentional discrimination claims: (1) the coaches would take more time with other players during practice; (2) the coaches did not teach the Plaintiff how to play the front row positions, even though each of the players was required to play front row and back row positions, and the coaches supported other players in doing so; (3) the coaches came at Plaintiff angrily almost, and were nice to the other girls and the coaches would often laugh at mistakes made by other players, but when it came to Plaintiff, the coaches were completely serious; (4) the coaches would laugh if other players missed serves in practice, but would get upset with Plaintiff if she missed a serve; (5) the coaches treated the other players differently from the Plaintiff all the time; (6) Plaintiff's teammates would sit at coach Allensworth's' desk and talk, and he rarely corrected them to do their work. However, when Plaintiff went up to his desk, it was different, and he told her to go back to her desk and do her work; (7) Coach Daigle would help Plaintiff's teammates with their classwork, but there were times when he expected Plaintiff to figure it out on her own; (8) the coaches would act normal around Plaintiff when her teammates were not present, but would not acknowledge the Plaintiff when her teammates were around unless she needed something. Docket. No. 39 at 2. Plaintiff maintains that these specific factual allegations show a "clear pattern of conduct inexplicable on grounds other than race through a course of conduct on behalf of the coaches." *Id.* at 3. Thus, Plaintiff argues, a *prima facie* case of discrimination was established. *Id.*

The R&R analyzed these new allegations by Plaintiff (that were raised for the first time in response to the motion for summary judgment) and correctly found them to be insufficient to show racial discrimination because, even if they were objectively unfair, they lack any evidentiary showing of racial discrimination toward Plaintiff. R&R at 15–16 (citing *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997)). To support these new allegations, the only evidence

Plaintiff cites are excerpts from Plaintiff's deposition transcript. Docket No. 24 at 2–6. But the Magistrate Judge reviewed these excerpts and found they lacked any evidentiary showing of racial discrimination toward Plaintiff and instead "confirmed that the basis of her lawsuit is due to her not being taken to the Yantis game at [her] deposition." R&R at 15 (citing Docket No. 22-15 at 12 (Plaintiff A.J.S. Dep. at 26:18–21)). The Court agrees that, even when viewing them in the light most favorable to Plaintiff and resolving all inferences in favor of Plaintiff, Plaintiff's statements from her deposition do not provide any competent summary judgment evidence of racial discrimination. Therefore, Plaintiff has failed to provide sufficient evidence to make a *prima facie* case of discrimination under the *McDonnell Douglas* burden shifting framework. Moreover, the Magistrate Judge expressed serious concerns about considering these new allegations that do not appear to have been fairly disclosed or fully explored during discovery. *Id.* (citing *Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (explaining that claims raised for the first time in a response to a motion for summary judgment are not properly before the court)).

Plaintiff next objects to the R&R's finding that Defendant met their burden by offering a legitimate, nondiscriminatory reason for not selecting Plaintiff to play in the Yantis game. Docket No. 39 at 4. Plaintiff argues that Defendant did not fully satisfy their burden because Defendant did not address the additional factual allegations raised by Plaintiff in response to Defendant's motion for summary judgment. *Id.*

This objection fails for at least three reasons. First, Defendant need not articulate a legitimate, nondiscriminatory reason for its alleged conduct given that Plaintiff failed to establish a *prima facie* case of discrimination under the *McDonnell Douglas* burden shifting framework. As discussed above, Plaintiff failed to establish a *prima facie* case of discrimination even when considering the new allegations raised by Plaintiff in response to Defendant's motion for summary

judgment. Second, even if Plaintiff had established a *prima facie* case of discrimination, the R&R correctly found that Defendant sufficiently provided a legitimate, nondiscriminatory reason for not selecting Plaintiff to play in the Yantis game. R&R at 16–18. Indeed, Defendant explained that the coaches selected more skilled players to play in the game, allowed a high school Senior to travel with the team, and allowed a player who took the initiative to show up as the team was leaving and support the team to travel with the team and film the game. *Id.* at 17–18. Third, assuming *arguendo* that Plaintiff had established a *prima facie* case of discrimination and Defendant had provided a legitimate, nondiscriminatory reason for its actions, Plaintiff fails to point to any competent summary judgment evidence to create a genuine issue of material fact that the reason is a pretext or that race was at least a motivating factor. *Id.* at 18–20. The summary judgment evidence shows that the coaching decision was nothing more than an honest assessment of the players' skills, actions to support the team and take initiative, and status as a high school Senior. *Id.* at 18.

    B.    Section 1983 Claim

        1)    Constitutional Violation

As to the equal protection claim, Plaintiff objects to the R&R's conclusion that she did not receive treatment different from that received by similarly situated individuals. *See* Docket. No. 39 at 4–5, 7. Plaintiff argues that the "R&R presumes a binary world of race—white and nonwhite." *Id.* at 4–5. Plaintiff contends that she received treatment different from that received by similarly situated individuals because she "was the only volleyball player who is mixed race of half African American and half Native American" and the "majority of volleyball players from all other races were rostered for the Yantis ISD game." *Id.* at 5. Plaintiff therefore attempts to place herself in a protected class all by herself and apart from the other two minority volleyball players

who are respectively African American and mixed race of African American and white. But Plaintiff's argument is beside the point because the R&R did not focus on any difference in treatment between Plaintiff and the two minority volleyball players who were on the varsity team and played in the Yantis game—rather, the R&R focused on Plaintiff failing to provide evidence that she received different treatment than two similarly situated white volleyball players who were not part of the varsity team and did not play in the Yantis game. Docket No. 38 at 24–25.

As stated in the R&R, "[i]ndividuals that are 'in all relevant aspects alike,' other than their membership in the protected class, are deemed similarly situated." *Id.* at 24; *see Doe v. Univ. of N. Texas Health Sci. Ctr.*, No. 4:21-CV-00658-O, 2023 WL 4166458, *5 (N.D. Tex. June 23, 2023). The R&R explained that, like Plaintiff, two white JV1 volleyball players were not part of the varsity team and ultimately did not play in the Yantis game. R&R at 24–25. The R&R found those two white volleyball players were like Plaintiff in all relevant aspects, except for their race, which made them similarly situated.[5] *Id.* Therefore, even assuming *arguendo* that Plaintiff was in a protected class that only included herself, that would not undermine the R&R's finding that Plaintiff failed to offer evidence that she was treated differently than the two similarly situated white volleyball players outside of Plaintiff's protected class.

Plaintiff further objects to the R&R's conclusion that Plaintiff did not offer evidence of intentional discrimination for her equal protection claim. Docket No. 39 at 5. Plaintiff argues that she did and cites once again her deposition testimony and the new factual allegations submitted for the first time in her response to the motion for summary judgment. *Id.*

---

[5] And, like Plaintiff, at least one of these similarly situated white volleyball players did not travel with the team and was never rostered for the Yantis game. *See* R&R at 24-25.

The R&R applied the same reasoning as in its Title VI section and provided an excerpt from Plaintiff's deposition to show that her testimony is conclusory and subjective. R&R at 25–26. In the excerpt, Plaintiff is asked what happened to cause her to believe that coach Allensworth was treating her differently. *Id.* She stated that it was because she was not taken to the Yantis game; as such, she concluded that this exclusion was due to her race. *Id.* The R&R provided quotes from Fifth Court cases that explicitly state that subjective opinion, like the evidence presented in this case, is insufficient to show intentional discrimination. *Id.* at 26.[6]

Plaintiff then objects to the Magistrate's findings of no due process violation. Docket No. 39 at 5–6. Plaintiff states the following:

> Plaintiff presented the argument that extracurricular activities are included in the federal definition of an education program. 42 U.S.C. § 2000d. n.2-202. Section 2000d guarantees the rights of students to not be excluded from participation in any program or activity receiving Federal financial assistance on the ground of race, color or national origin. *Id*. Plaintiff posits that this guarantee is a property right, and therefore Defendant owed Plaintiff with the minimal due process procedures provided by the Fourteenth Amendment.

Docket No. 39 at 6. First, Plaintiff confuses the claims here. The R&R discussed interscholastic sports not being a protected liberty or property interest under the due process clause, not 42 U.S.C. § 2000d. Docket No. 38 at 27. Second, Plaintiff implies that 42 U.S.C. § 2000d creates a constitutional right protected by the due process clause. Both of these arguments fail because the R&R explains that a student's participation in interscholastic athletics is not a liberty or property interest protected by the due process clause. *See Hardy v. University Interscholastic League*, 759

---

[6] *See Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983) ("We are not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief."); *Raina v. Veneman*, 152 Fed. Appx. 348, 350 (5th Cir. 2005) ("An employee's subjective belief that he was discriminated against, standing alone, is not adequate evidence to survive a motion for summary judgment."); *Cf., Fennell*, 804 F.3d at 415 (inferring discriminatory intent when the school coach "admonished" a popular African American hairstyle worn by the plaintiff and referred to it as "ethnic").

F.2d 1233, 1235 (5th Cir. 1985) (Federal courts "are not super referees over high school athletic programs."); *Blue v. University Interscholastic League*, 503 F. Supp. 1030, 1035 (N.D. Tex. Nov 19, 1980) ("Plaintiffs have no property interest in the alleged injury to their hoped-for careers in college football or for football scholarships arising from inability to play in the football playoffs or to be viewed by college scouts.").

2) Color of State Law

Finally, Plaintiff objects to the Magistrate Judges' findings that Plaintiff did not establish a customary practice of discrimination because the R&R did not consider specific factual allegations raised for the first time by Plaintiff in her responsive brief to the motion for summary judgment. Docket No. 39 at 6–7. Plaintiff argues that these allegations were evidence of a customary practice of discrimination by the District. *Id.*

As explained in the Report, "[w]hen a plaintiff uses prior instances to formulate a widespread practice, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" Docket No. 38 at 29; *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984). As explained throughout the R&R, the new allegations mentioned in the response to the motion for summary judgment are not supported by competent summary judgment evidence and were seemingly not fairly disclosed or fully explored during discovery. *See* Docket No. 38 at 15, 18 n. 17, 25. Thus, the R&R correctly considered the summary judgment evidence that was before the Court (*i.e.*, Plaintiff not playing in the Yantis volleyball game and Plaintiff's statements made during her deposition) and concluded that it was not enough to infer that the Detroit ISD policymakers authorized or approved any discriminatory conduct.

## II. The Court Adopts the Magistrate Judge's Unobjected-to Findings and Conclusions of Law

The Court also finds the Magistrate Judge's unobjected-to findings and conclusions of law in the R&R are correct and adopts them herein. The unobjected-to findings and conclusions of law by the Magistrate Judge would therefore be subject to plain error review on appeal. *See Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1)).

## CONCLUSION

The Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct. Accordingly, for the reasons set forth above, it is

**ORDERED** that Plaintiff's Objections (Docket No. 39) are **OVERRULED**. It is further

**ORDERED** that the Report and Recommendation of the Magistrate Judge (Docket No. 38) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 22) is **GRANTED**. It is further

**ORDERED** that Plaintiff's claims against Defendant Detroit Independent School District are **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that any pending motions in the above-captioned case are **DENIED-AS-MOOT**. A final judgment will be entered in this case in accordance with this Order.

**So ORDERED and SIGNED this 27th day of December, 2023.**

*Robert W Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE